Colin P. King (Utah State Bar No. 1815)
E-mail: cking@dkolaw.com
Dustin Lance (Utah State Bar No. 8804)
E-mail: dlance@dkolaw.com
DEWSNUP, KING & OLSEN
36 South State Street, Suite 2400
Salt Lake City, Utah  84111-0024
Telephone:  (801) 533-0400
  Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CRAIG VON COLLENBERG and KATHERINE VON COLLENBERG, husband and wife and guardians and next friends of JOHN DOE 1, a minor; MARK HAWKS and KIM HAWKS, husband and wife and guardians and next friends of JOHN DOE 2, a minor; ALISON PAINE, guardian and next friend of JOHN DOE 3, a minor; REGINA LASKY, an individual, S.L., an individual; LEE STOECKLE , an individual and C. S., an individual,<br><br>           Plaintiffs,<br><br>v.<br><br>SILVERADO ACADEMY,  a limited liability company, TIM BRIDGEWATER, an individual, KREG GILMAN, an individual, ROBERT CRIST, an individual, JOSH KELLUM, an individual, COLIN ADAMSON and DOES I-V,<br><br>           Defendants. | **THIRD AMENDED COMPLAINT AND JURY DEMAND**<br><br>2:11-cv-00574-DN<br><br>Judge David Nuffer |

The Plaintiffs, Craig Von Collenberg and Katherine Von Collenberg, husband and wife and guardians and next friends of John Doe 1, a minor; Mark Hawks and Kim Hawks, husband and wife and guardians and next friends of John Doe 2, a minor; Alison Paine, guardian and next friend of John Doe 3, a minor; S.L., an individual; and C.S., an individual, amend their complaint and allege as follows:

## PARTIES AND JURISDICTION

1. Plaintiffs Craig von Collenberg and Katherine von Collenberg are husband and wife and parents, guardians and next friends of plaintiff John Doe 1, a male minor. The Von Collenbergs are citizens of Nevada.

2. Plaintiffs Mark Hawks and Kim Hawks are husband and wife and parents, guardians and next friends of John Doe 2, a male minor. The Hawkses are citizens of Georgia.

3. Plaintiff Alison Paine is the mother, guardian and next friend of Plaintiff John Doe 3. Ms. Paine and her son are citizens of Michigan.

4. Plaintiffs Regina Lasky and S.L. are citizens of Arizona.

5. Plaintiffs Lee Stoeckle and C.S. are citizens of California.

6. The Defendant, Silverado Academy, LLC, is a limited liability company organized and existing under the laws of the State of Utah with its principal place of business in Panguitch, Garfield County, Utah.

7. Tim Bridgewater, Kreg Gilman, and Bob Crist were the primary members of the LLC listed in public filings.

8. Josh Kellum and Colin Adamson were employees of Silverado and held supervisory roles at Silverado at all relevant times herein.

9. Mr. Bridgewater, Mr. Gilman, Mr. Crist, Mr. Kellum and Mr. Adamson are citizens of Utah.

10. Plaintiffs reserve the right to name additional Defendants (DOES I-V) as they may be determined in the future.

11. The amount in controversy exceeds $75,000, exclusive of interest and costs.

12. This Court has jurisdiction of this case under 28 U.S.C. § 1332.

## GENERAL ALLEGATIONS

13. Defendant, Silverado Academy, LLC, operated a clinical boarding school offering residential care for troubled teenagers between ages 13 and 18 in Garfield County, Utah.

14. The program cost in the range of $4,000 to $7,000 a month.

15. Silverado Academy required families to make a minimum commitment of six months. The length of the program, however, varied depending on a student's progress. Successful program completion occurred when a student had achieved all levels of the academy's "TRUST" program and had spent time as a transition student.

16. Employees and management at Silverado had discretion to determine when a student has successfully completed each level of the "TRUST" program.

17. Silverado advertised that it provides "a 'hands on' management team" with a "long tenure of behavioral health care experience" and a caring and committed staff.

18. Tim Bridgewater was Silverado's Financial Director from its inception and, beginning in November 2010, it's Executive Director.

19. Kreg Gilman was Silverado's Executive Director until November 2010.

20. Robert Crist was Silverado's Medical Director from its inception.

21. Kreg Gillman resigned his position as the Executive Director in November of 2010, when Bridgewater and Gillman refused to follow his advice that the school be closed due to lack of funds and proper supervision for students.

22. Students were assigned to a cabin, and each cabin was assigned a set of "coaches," along with a therapist.

23. The coaches were placed in a position of trust over the minors in the program.

24. Coaches were not allowed to have one on one access to any Silverado students.

25. Sometime before 2010 the Defendants hired Eric Allen Glosson (hereinafter "Glosson"), who had no formal training and no post-high school education, as a "coach" at the academy.

26. Silverado employees and management failed to contact Glosson's prior employer (another residential care facility for troubled teenagers) for a reference prior to his employment with Silverado.

27. According to Glosson he was terminated from his prior employment after at least two minors reported that Glosson had sexually abused them.

28. Silverado management terminated Glosson's employment in January 2010 because of concerns it had that he was too close to the teenagers in the program, or was otherwise inappropriate with the minors, given his supervisory role.

29. Based on the problems that occurred during his initial employment at Silverado and his subsequent termination, Glosson was not eligible to be rehired by Silverado in any capacity.

30. In early 2011, despite the Defendants knowledge of his prior problems at Silverado and the details of his termination, Silverado rehired Glosson as a coach at Silverado and again placed him in a position of trust over the minors in the program.

31. Josh Kellum recommended Glosson for renewed employment at Silverado.

32. Glosson was not properly trained on Silverado's rules and regulations for someone in his position, of particular importance, he was not trained among others on the topics of: shower time; activities supervision and contraband.

33. On March 28, 2011, the State of Utah, Department of Human Services denied Glosson's background screening application and instructed Silverado that Glosson was "not permitted to have direct access to children or vulnerable adults and [was] not eligible to provide services to programs licensed by the Department of Human Services, Office of Licensing . . .."

34. Due to the Defendants' absence of appropriate oversight, supervision and security policies, procedures and practices, Glosson was not terminated and was allowed to have repeated access to and time with individual minor students privately, in multiple

locations and settings, including mionors over whom he was not a coach and had no supervisory duties.

35. On approximately 50 occasions, Glosson sexually abused no less than nine minors at Silverado, including the minor Plaintiffs, in Silverado's classroom; Glosson's living quarters; the students' living quarters, Silverado's vehicles and many other places.

36. Glosson's sexual abuse of the minor Plaintiffs ranged from showing them pornography, spying on them in the shower, fondling the minors' genitals to videotaped oral sex. Single episodes ranged from seconds to approximately an hour and a half.

37. Glosson used various means to discourage the students from saying anything about the abuse, including, but not limited to, the threat of not recommending that a student be advanced in the program, bribery, physical force, intimidation, and deceit.

38. Glosson was an employee and under the direction of Silverado at all times when the students were sexually abused.

39. The abused Plaintiffs were in the legal custody and care of the Defendants at all times they were sexually abused.

40. Sometime between March and May 2011, Glosson called law enforcement officials in Panguitch because a youth in Arizona was contacting him through Facebook and threatening to publicize sexual abuse that Glosson had perpetrated on the youth when the youth was a minor. Law enforcement officials came to Silverado Academy to investigate the complaint, and Silverado supervisors, owners and/or management were aware of this incident and the claims agaisnt Glosson.

41. After this incident in contravention of Silverado rules and regulation, none of the Defendants took action against Glosson and they continued to allow him to work in close proximity to the minors in the program.

42. Many of the incidents of sexual assault that Glosson committed against the minor Plaintiffs were committed after law enforcement officials visited Silverado to investigate Glosson's complaint and the allegations against Glosson

43. In late May or early June 2011, S.L. and other minor students reported, in writing, to Josh Kellum that Glosson had sexually abused them and other Silverado students.

44. Josh Kellum submitted the written report of sexual abuse to his and Glosson's supervisor, Colin Adamson.

45. Silverado policies, regulations and Utah law required the abuse be immediately reported to law enforcement and agencies within the State of Utah.

46. After receiving the written report of abuse, Josh Kellum discussed the details of the report with Glosson, identified the accusers and told Glosson "not to worry about it."

47. After receiving the written report of the sexual abuse, none of the Defendants took action against Glosson and they continued to allow him to work in close proximity, including one on one with the minors in the program.

48. After receiving the students' written report of sexual abuse, Colin Adamson and Silverado management claimed to have "lost" the students' written report,

failed to contact law enforcement or to otherwise report the sexual abuse to any agency within the State of Utah.

49. At least two of the Plaintiffs became victims of Glosson's sexual abuse after the other students filed the written report of sexual abuse against Glosson.

50. On June 18, 2011, Glosson sexually abused John Doe 1.

51. John Doe 1 reported the sexual abuse to Silverado management who finally contacted law enforcement.

52. Glosson was arrested on June 19, 2011.

53. Glosson was charged in the Federal Courts for the production of child pornography and in the Utah State Courts for Forcible Sodomy, Forcible Sexual Abuse and Dealing in Materials Harmful to Minors. Glosson entered into plea agreements in both Federal and State Court and has been sentenced to no less than 20 years in prison.

54. When John Doe 1 reported Glosson's sexual assault to the academy's management, he was told not to say anything to his parents about the assault, during his Father's Day call to them on June 19, 2011.

55. Following the sexual abuse on June 20, 2011, Silverado offered to provide counseling services to some of the victims. However, Silverado did not disclose to the victims or their families that the person the academy was offering to provide the counseling services (Robert Crist) was an owner and otherwise aligned with the Defendants, had a conflict of interest and he was only meeting with the students "as an investor" to determine the future course of Silverado.

56. As a proximate result of the acts and omissions of the Defendants, the minor Plaintiffs have suffered severe harms and injuries, including, but not limited to, physical pain and injuries; severe psychological, mental and emotional injuries including distress, fear, humiliation, injury to self-esteem, confusion, intimidation, and additional and other injuries.

57. As a proximate result of the acts and omissions of the Defendants, the adult Plaintiffs have suffered injuries and damages, including severe fear, distress and other psychological and physical injuries from learning of the degrading and shocking sexual abuses of their children at the hands of persons in whom they had put their trust and confidence; loss of their investments in the program; and the expenses involved in traveling to the academy and removing their children from the program.

58. As a proximate result of the acts and omissions of the Defendants, the Plaintiffs have lost tuition paid to Silverado Academy, LLC, and have also incurred or will incur in the future expenses for counseling, therapy and related care and treatment.

59. The acts and omissions of the Defendants manifested a knowing and reckless indifference toward, and a disregard of, the rights of Plaintiffs and their minor children, entitling the Plaintiffs to punitive damages.

**FIRST CAUSE OF ACTION**

60. The Plaintiffs incorporate by this reference the preceding averments as if fully set forth herein.

61. The minor Plaintiffs were placed by their parents (the adult Plaintiffs) under the care, custody control, and supervision of the Defendants and their staff.

62. A fiduciary relationship existed between the Defendants and the minor Plaintiffs. The Defendants were responsible for the minor Plaintiffs, stood in loco parentis, acted as their caretaker, and were responsible for their care and safety while at the academy.

63. As a result of the fiduciary relationship between the Defendants and the minor Plaintiffs, the Defendants owed them duties of honesty and fidelity and a duty to do no harm, to uphold their trust, to treat them with the utmost good faith, and to act for their benefit.

64. The Defendants breached their fiduciary duties to the minor Plaintiffs by violating their trust, causing them harm, and failing to act in their best interest and for their benefit by, among other things, placing them and allowing them to continue to be in a situation where they could be sexually abused by Glosson. The Defendants further breached their fiduciary duties by discouraging the minor Plaintiffs from telling their parents about the abuse, and by offering to provide counseling for the Plaintiffs from someone who had an undisclosed conflict of interest.

65. The Defendants' breaches of their duties as described above were a proximate cause of the Plaintiffs' injuries and damages.

## SECOND CAUSE OF ACTION

66. The Plaintiffs incorporate by this reference the preceding averments as if fully set forth here.

67. The Defendants had a duty to adopt, implement, and act on appropriate and reasonable policies, procedures, regulations and practices regarding the hiring,

training, retention, re-hiring, supervision, and oversight of their staff, and regarding the safety and security of the minor children over whom they exercised control and custody.

68. The Defendants breached their duties to implement and act on appropriate and reasonable policies, procedures, and practices regarding the hiring, training, retention, re-hiring, supervision, and oversight of their staff, and regarding the safety and security of the minor children over whom it exercised control and custody.

69. The Defendants' breaches of their duties as described above were a proximate cause of the Plaintiffs' injuries and damages.

### THIRD CAUSE OF ACTION

70. The Plaintiffs incorporate by this reference the preceding averments as if fully set forth here.

71. The Defendants owed the Plaintiffs a duty to exercise reasonable care in investigating, hiring, training, retention, re-hiring, retaining, and supervising Glosson.

72. The Defendants breached their duty that it owed to the Plaintiffs by their negligence or recklessness in hiring, training, retention, re-hiring, retaining and supervising Glosson.

73. The Defendants breached the duties that they owed to the Plaintiffs.

74. The Defendants' breaches of their duties as described above were a proximate cause of the Plaintiffs' injuries and damages.

### FOURTH CAUSE OF ACTION

75. The Plaintiffs incorporate by this reference the preceding averments as if fully set forth here.

76. The acts and omissions of the Defendants unintentionally caused the Plaintiffs emotional distress.

77. The Defendants should have realized that (a) their conduct involved an unreasonable risk of causing the distress and (b) the distress, if caused, might result in illness and psychological, emotional, and/or bodily harm.

78. The Plaintiffs have suffered illness or bodily harm as a proximate result of the Defendants' acts or omissions.

## FIFTH CAUSE OF ACTION

79. The Plaintiffs incorporate by this reference the preceding averments as if fully set forth herein.

80. The Defendants' conduct was outrageous.

81. The Defendants acted with knowing conscious or reckless disregard of the probability of causing the Plaintiffs emotional distress.

82. The Plaintiffs have suffered severe physical, psychological, and emotional distress and injuries as a proximate result of the Defendants' acts or omissions.

## SIXTH CAUSE OF ACTION

83. The Plaintiffs incorporate by this reference the preceding averments as if fully set forth herein.

84. Plaintiffs have performed all obligations, conditions and agreements required of them by the parties' contract.

85. Defendants have failed and refused to fully perform their obligations of the contract and to provide all of the services that were contracted and paid for.

86. Plaintiffs have requested return of the unearned tuition.

87. Defendants have failed and refused to return unearned tuition.

88. Because of Defendants' failure to perform, Plaintiffs have been damaged in an amount to be proven at trial, plus interest, attorneys' fees and court costs but in no case less than the amount of the unearned tuition.

## SEVENTH CAUSE OF ACTION

89. The Plaintiffs incorporate by this reference the preceding averments as if fully set forth herein.

90. Plaintiffs are informed and believe and therefore allege that Silverado Academy, LLC is owned and managed by Tim Bridgewater, Kreg Gilman, Bob Crist, and others that may be determined in the future.

91. Plaintiffs are informed and believe and therefore allege that at all relevant times, alleged herein, Silverado Academy, LLC was managed and controlled by Mr. Bridgewater, Mr. Gilman, and Mr. Bob Crist.  In particular, Mr. Bridgewater, Mr. Gilman, and Mr. Bob Crist are all members of Silverado Academy, LLC.

92. Plaintiffs are informed and believe and therefore allege that Silverado Academy, LLC, has not had and does not have any genuine or separate existence from its members, but has been used and exists for the sole purpose of permitting its members to transact business under a separate guise.

93. Plaintiffs are informed and believe and therefore allege that Silverado Academy, LLC, constituted the undercapitalization of a closely held limited liability company.

94. Plaintiffs are informed and believe and therefore allege that Silverado Academy, LLC, failed to observe required legal formalities.

95. Plaintiffs are informed and believe and therefore allege that Silverado Academy, LLC, did not maintain (or inappropriately destroyed) required records including, but not limited to, emails and computer data.

96. Plaintiffs are informed and believe and therefore allege that Silverado Academy, LLC, purposefully deleted computer files, including but not limited to, emails, used forensic software to "wipe" portions of its computer server and physically dismantled the server in an attempt to conceal, delete and destroy evidence of knowledge of Glosson's actions and Silverado's actions/inactions.

97. Plaintiffs are informed and believe and therefore allege that Silverado Academy, LLC, with its members including Mr. Bridgewater, Mr. Gilman, and Mr. Crist, constituted an overlap in ownership and officers.

98. Plaintiffs are informed and believe and therefore allege that there exists such a unity of interest, ownership, and control by Mr. Bridgewater, Mr. Gilman, and Mr. Crist over Silverado Academy, LLC that they are inseparable from one another.

99. The adherence to the fiction that Silverado Academy, LLC and its members/owners Mr. Bridgewater, Mr. Gilman, and Mr. Crist are separate from each other under these circumstances would sanction a fraud and/or promote injustice.

100. Mr. Bridgewater, Mr. Gilman, Mr. Crist, and Silverado Academy, LLC are the alter egos of one another and thus are all jointly and severally liable for Plaintiffs' damages.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for relief as follows:

a. For damages for the Plaintiffs' physical, mental, psychological and emotional pain and suffering, mental and emotional distress, discomfort, and loss of enjoyment of life, in amounts to be proved at trial;

b. For damages for past and future expenses for counseling, therapy, and related care and treatment, in amounts to be proved at trial;

c. For damages for the loss of Plaintiffs' investments in the program;

d. For the expenses involved in traveling to the academy and removing their children from the program;

e. For punitive damages;

f. For appropriate sanctions for the Defendants' destruction and spoliation of evidence;

g. For costs, expenses and attorney's fees associated with this proceeding to the extent allowed by law;

h. For pre- and post-judgment interest to the extent allowed by law; and

i. For such other relief as this Court deems just and proper under the circumstances.

## JURY DEMAND

The Plaintiffs hereby reaffirm their jury demand.

DATED this __January 31__, 2013.

                           DEWSNUP KING & OLSEN

                           /s/ Dustin Lance
                           Colin P. King
                           Dustin Lance

                           *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this __January 31__, 2013, I caused the foregoing to be filed with the Clerk of the Court using the Court's CM/ECF system, which sent notice of the filing to the following:

Rodney R. Parker
**SNOW, CHRISTENSEN & MARTINEAU**
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, UT  84145-5000
  *Attorneys for Defendant Silverado Academy, LLC*


                           /s/ Dustin Lance