Colin P. King (1815)
cking@dkolaw.com
Dustin Lance (8804)
dlance@dkolaw.com
Jessica A. Andrew (12433)
jandrew@dkolaw.com
DEWSNUP, KING & OLSEN
36 S. State Street, Ste. 2400
Salt Lake City, UT 84111
(801) 533-0400

*Attorneys for Plaintiffs*

---

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION**

| | |
|---|---|
| CRAIG VON COLLENBERG and KATHERINE VON COLLENBERG, husband and wife and guardians and next friends of JOHN DOE 1, a minor; MARK HAWKS and KIM HAWKS, husband and wife and guardians and next friends of JOHN DOE 2, a minor; ALISON PAINE, guardian and next friend of JOHN DOE 3, a minor; REGINA LASKY, an individual, S.L., an individual; LEE STOECKLE , an individual and C. S., an individual, <br><br> Plaintiffs, <br><br> v. <br><br> SILVERADO ACADEMY,  a limited liability company, TIM BRIDGEWATER, an individual, KREG GILLMAN, an individual, ROBERT CRIST, an individual, JOSH KELLUM, an individual, COLIN ADAMSON and DOES I-V, <br><br> Defendants. | **MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND ALTERNATIVE MOTION TO BIFURCATE** <br><br> 2:11-cv-00574-DN-PNW |

## INTRODUCTION

This is an action for damages arising out of sexual abuse of young boys that occurred at Defendants' clinical boarding school, Silverado Academy, by Defendants'

employee, Eric Glosson, who was known to Defendants to have prior instances of inappropriate relationships and contact with children, and to be prohibited by the State of Utah from having access to children or working for a school such as Silverado Academy.  Mr. Glosson was arrested on charges of child sex abuse on June 22, 2011. Plaintiffs allege that Defendants knew or should have known of Mr. Glosson's inappropriate behavior and abuse but chose to keep him on staff, giving him unsupervised access to Silverado students, including Plaintiffs and/or their minor children (Plaintiffs), which children were then repeatedly sexually abused by Mr. Glosson.

Defendants have moved pursuant to Rule 56 for dismissal of Plaintiffs' prayer for punitive damages, or to bifurcate the trial of this matter,[1] on grounds that Plaintiffs have insufficient evidence to support claims for punitive damages.  This contention ignores the applicable law and amplifies the prejudice to Plaintiffs that has resulted and continues to result from Defendants ongoing refusal to produce discovery this Court has ordered them to produce.  This motion must be denied.

## RESPONSE TO DEFENDANTS' STATEMENT OF FACTS

Plaintiffs respond as follows to Defendants' statements of "undisputed material facts" that Plaintiffs dispute:

**Statement No. 3:**  *Approximately one week before Mr. Glosson was arrested, Mr. Kellum overheard two students in the R&A cabin discussing what turned out to be incidents of sexual assault by Mr. Glosson.  He encouraged the students to report the*

---

[1] Defendants' Motion for Partial Summary Judgment on Alter Ego and Punitive Damages and Alternative Motion to Bifurcate, doc. 73, filed Mar. 28, 2014 (Motion for Summary Judgment), 2.

*incidents on a "grievance" form, which at least one of the students apparently did, and Mr. Kellum testified that he received the grievance form and put the form on his supervisor, Mr. Adamson's, desk.*

**Response:**  Defendants improperly date this incident "one week before Mr. Glosson was arrested."  Mr. Kellum testified that he was unable to identify how long before Mr. Glosson's arrest he overheard the two students and submitted the grievance form to Mr. Adamson.[2]

**Statement No. 4:**  *Mr. Kellum was unaware of Mr. Glosson's inappropriate activity with the students before he received this grievance form.*

**Response:**  This statement is misleading and not supported by the citation provided.  Mr. Kellum testified that he was not aware of Mr. Glosson spending time alone with students.[3]

**Statement No. 5:**  *Mr. Adamson did not see the grievance form that Mr. Kellum put on his desk.  He did not read the form, and was unaware of its contents.*

**Response:**  Whether Mr. Adamson in fact saw the grievance form is a matter of dispute.  Mr. Kellum testified that he hand-delivered the grievance form to Mr. Adamson and concluded that Mr. Adamson saw it.[4]  What is undisputed is that Mr. Adamson took no action on the grievance form.  He testified that had he seen it, "I

---

[2] *See* Deposition of Joshua Kellum, 75:18-23.  Referenced portions attached hereto as Exhibit 2.

[3] *Id.* at 40:16-42:12 (discussing only Mr. Glosson being alone with students, not the details of the grievance, which had not even been discussed yet).

[4] *Id.* at 63:25-64:9.

would have called the Sheriff myself."[5]  Either Mr. Kellum did not give the grievance to

Mr. Adamson, or Mr. Adamson did not read or take action on it.

**Statement No. 6:**  *Mr. Adamson never saw Eric Glosson do "anything*

*untoward" with the kids at Silverado prior to the time Mr. Glosson was arrested, and*

*he never had any reason to discipline or write up a report on Mr. Glosson relating to*

*his interaction with kids.*

**Response:**  Mr. Adamson most decidedly *did* "have reason to discipline or write

up a report on Mr. Glosson."  Ongoing, repeated sexual abuse of at least nine children

while under Mr. Adamson's supervision[6] was certainly "reason" to discipline Mr.

Glosson.  Mr. Adamson's performance of his supervisory duties was so grossly

inadequate that he failed to clue-in to horrific child abuse indisputably occurring on his

watch and right under his nose.[7]

**Statement No. 8:**  *Silverado's assets consisted of the building and property,*

*savings accounts, furniture, computers, and six vans.*

**Response:**  Defendants have withheld all evidence documenting Silverado

Academy's financial condition, in direct violation of this Court's January 30, 2014

Memorandum Decision and Order, which ordered Defendants to produce this evidence

on or before March 3, 2014.[8]

---

[5] Deposition of Colin Adamson, 71:18-72:14.  Referenced portions attached hereto as
Exhibit 4.

[6] *See id.* at 52:11-55:2.

[7] *Id.* at 55:24-56:10 (admitting that Mr. Glosson's sexual abuse was a result of the failure
to oversee and supervise him as Silverado Academy should have done).

[8] Memorandum Decision and Order, Doc. 62, filed Jan. 30, 2014 (Doc. 62 Order), 9
(acknowledging that "the financial position and records of Defendant are relevant to
Plaintiffs' claims," and requiring production of this evidence).

**Statement No. 9:**  *The building and property were foreclosed on at or around April 2012.*

**Response:**  See response to Statement No. 8.  This response is also incomplete and misleading.  At least some assets—pieces of furniture—were taken by Defendants Robert Crist for his personal use.[9]

**Statement No. 10:**  *The computers were of nominal value, and thus donated to the local school district.*

**Response:**  See response to Statement No. 8.  This statement is also incomplete by reason of not accounting for the deliberate mishandling of the computer hard drive Defendants deleted, wiped, dismantled and in part lost.[10]

**Statement No. 11:**  *The vans were sold to private parties, and all proceeds went to satisfy part of outstanding loans and accounts payable outstanding to vendors. LLC members did not receive any proceeds from these sales.*

**Response:**  See response to Statement No. 8.  This response is also incomplete and misleading.  Defendant Tim Bridgewater testified that at least one van was given to a former employee.[11]

**Statement No. 12:**  *Any remaining assets, including the facility, are the subject of a security interest to Silverado's creditor, Zion's Bank, or were sold to pay outstanding obligations to creditors and to pay Silverado's employees.*

---

[9] Deposition of Timothy Bridgewater, 196:19-197:3 (Mr. Gillman took the furniture, and no money from its sale ever came back to the school).  Referenced portions attached hereto as Exhibit 6.

[10] *See* Plaintiffs' Motion and Memorandum to Impose Sanctions for Spoliation of Evidence, Doc. 71, filed Mar. 19, 2014 (setting forth the facts proving Defendants' deliberate destruction of discoverable ESI from their computer hard drive array).

[11] Bridgewater depo (Ex. 6), 197:4-11.

**Response:**  See response to Statement No. 8.

**Statement No. 13:**  *Silverado has no assets available to satisfy a judgment for Plaintiffs, if one is awarded in this matter, besides its insurance policy.*

**Response:**  See response to Statement No. 8.

**Statement No. 14:**  *Silverado Academy, LLC is a limited liability company.*

**Response:**  Silverado Academy LLC is the alter-ego of its principals, Tim Bridgewater, Kreg Gillman, and Robert Crist, by reason of those principals' failure to comply with the requirements imposed on LLCs to afford the principals the protections of the corporate veil.  The evidence currently in the record establishes that Silverado Academy was grossly undercapitalized,[12] and that the Principal Defendants, as members of the LLC,[13] did not observe corporate formalities or maintain corporate records, as required as a condition of enjoying the protections of the corporate veil.[14]  Further alter-ego evidence has been improperly withheld by Defendants, contrary to this Court's Order.  Three months ago, the Court censured Defendants' "failure to adequately and fully respond to all of Plaintiffs' discovery requests" on precisely this point, ordered

---

[12] *See* Kreg Gillman deposition, 20:22-21:5 (Mr. Gillman, who was then a partner with Defendants Bridgewater and Crist, believed they should have closed Silverado Academy because it was "under-capitalized"); 82:23-83:20 (Mr. Gillman told Defendants Bridgewater and Crist that they should shut down Silverado Academy because it was too expensive, and that he would leave if they didn't close).  Referenced portions attached hereto as Exhibit 1.

[13] UTAH CODE ANN. § 48-2c-113 (requiring that LLCs maintain copies of meeting minutes and written consents obtained from members).

[14] *See* Gillman depo (Ex. 1), 81:15-21 (Silverado Academy's board met "minimally"); *Jones & Trevor Marketing, Inc. v. Lowry*, 284 P.3d 630, 636 (Utah 2012) (the "formalities requirement" includes consideration of such items as undercapitalization, failure to observe corporate formalities, and absence of corporate records), quoting *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987), quoted in Motion for Summary Judgment, 15.

Defendants to produce that evidence, and allowed Plaintiffs' to amend their complaint to assert alter-ego claims over Defendants' challenge that it would not survive summary judgment.[15]

**Statement No. 16:**  *A loan from Zion's Bank, along with contributions from the members of Silverado, had been used to fund the initial operation of the company, and additional member contributions occurred over the years.*

**Response:**  See response to Statement No. 8.

### PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS

**Parties**

1.  Defendant Silverado Academy, LLC, is a corporate defendant and was Mr. Glosson's employer.[16]

2.  Defendants Tim Bridgewater, Kreg Gillman and Robert Crist (the Principal Defendants) were principals of Silverado Academy, LLC.[17]

3.  On January 30, 2014, the Court permitted Plaintiffs to amend their complaint to name the Principal Defendants on grounds that the evidence could support a finding that Silverado Academy, LLC, was an alter-ego of the Principal Defendants.[18]

4.  Defendants Josh Kellum and Colin Adamson (the Employee Defendants) were employees of Silverado Academy.[19]

---

[15] Doc. 62 Order, 15-16.

[16] *See* Motion for Summary Judgment, 12 (Mr. Glosson was an employee of Silverado Academy").

[17] Gillman depo (Ex. 1), 16:20-24.

[18] *See* Doc. 62 Order, 15-16 (finding that amendment would not be futile and granting Plaintiffs leave to file their amended complaint naming Bridgewater, Gillman and Cris).

[19] *See* Kellum depo (Ex. 2), 8:14-10:5; Adamson depo (Ex. 4), 16:18-23.

5.   The Court likewise permitted Plaintiffs to amend their complaint to name the Employee Defendants.[20]

**Course of Discovery**

6.   Plaintiffs have properly sought, and this Court has ordered that Defendants produce, discovery relevant to a wide range of topics, including but not limited to the identity, job description, and supervisor of employees and officers of Silverado Academy; all employees and officers with knowledge of the misconduct of Mr. Glosson; complaints or reports of abuse since 2008; Silverado Academy's financial documents and information; minutes of board meetings held by the Principal Defendants; incident and crisis intervention records; emails discussing Mr. Glosson; advertising materials; and employee disciplinary action forms relating to Mr. Glosson.[21]

7.   Pursuant to the Court's order, these items were to have been produced nearly two months ago.[22]

8.   Not a solitary piece of evidence has been produced pursuant to the Court's order.[23]

---

[20] Doc. 62 Order, 17 (owing to Defendants' failure to adequately and fully respond to Plaintiffs' discovery requests, Plaintiffs' attempt to name Kellum and Anderson is not untimely).

[21] *See* Doc. 62 Order; Plaintiffs' Second Set of Interrogatories and Requests for Production of Documents to Silverado, Doc. 36-8, filed Sept. 27, 2013 as an exhibit to Plaintiffs' Motion to Compel Discovery (Doc. 36).

[22] Doc. 62 order, 5-11 (ordering Defendants to produce responses on all of these points by 30 days from the date of the order);

[23] *See* Affidavit of Dustin Lance, ¶ 2.  Attached as Exhibit 1 to Plaintiffs' Motion and Supporting Memorandum for Imposition of Sanctions for Discovery Abuse, doc. 75, filed April 24, 2014.

9. Defendants have also spoliated critical evidence of the timing of their knowledge of Mr. Glosson's misconduct by deliberately deleting, wiping, dismantling and in part losing their computer hard drive array in a manner that renders irretrievable all discoverable e-mail communications.[24]

10. As a result of Defendants' withholding and destruction of evidence, Plaintiffs have been severely limited in their ability to prove their claims, in the following particulars:

a.   Plaintiffs' alter-ego claims are materially compromised by reason of Defendants' unwillingness to produce the evidence documenting their exercise (or lack thereof) of the requisite corporate formalities and separation or co-mingling of assets necessary to establish the degree of separation (or lack thereof) between Silverado Academy LLC and the Principal Defendants;[25]

b.   Plaintiffs' ability to prove that Defendants knew of Mr. Glosson's misconduct before Plaintiffs were abused is materially compromised by Defendants' willful and deliberate destruction of discoverable e-mail correspondence;[26]

c.   Plaintiffs' ability to prove that Defendants knew of Mr. Glosson's misconduct before Plaintiffs were abused is also materially compromised by Defendants' failure to produce evidence this Court ordered Defendants to produce, such as incident

---

[24] *See* Plaintiffs' Motion and Memorandum to Impose Sanctions for Spoliation of Evidence, Doc. 71, filed Mar. 19, 2014.

[25] Lance Aff. (Ex. 1 to Doc. 75), ¶ 3.

[26] *Id.* at ¶ 4.

and crisis intervention records and complaints and reports of abuse, including the written grievance submitted to Colin Adamson by Joshua Kellum;[27]

        d.  Plaintiffs' ability to prove Silverado Academy LLC's financial condition, and thus to support the propriety of any punitive damages award against Silverado Academy LLC, is materially compromised by Defendants' failure to produce evidence concerning Silverado Academy's financial condition, which this Court ordered Defendants to produce.[28]

    11.  Plaintiffs have made numerous attempts to obtain this discovery from Defendants.  Defendants have chosen to disregard the Court's order and Plaintiffs' repeated requests for production of this evidence.[29]

**Alter-ego evidence that has been produced**

    12. Silverado Academy was undercapitalized.[30]

    13. The Principal Defendants, as members of the LLC,[31] did not observe corporate formalities or maintain corporate records,[32] as required as a condition of enjoying the protection of the corporate veil.[33]

---

[27] *Id*

[28] *Id.* at ¶ 5.

[29] *Id.* at ¶ 6-8.

[30] *See* Gillman depo (Ex. 1), 20:22-21:5 (Mr. Gillman, who was then a partner with Defendants Bridgewater and Crist, believed they should have closed Silverado Academy because it was "under-capitalized"); 82:23-83:20 (Mr. Gillman told Defendants Bridgewater and Crist that they should shut down Silverado Academy because it was too expensive, and that he would leave if they didn't close).

[31] UTAH CODE ANN. § 48-2c-113 (requiring that LLCs maintain copies of meeting minutes and written consents obtained from members).

[32] *See, e.g.*, Gillman depo (Ex. 1), 81:15-21 (Silverado Academy's board met "minimally").

**Defendants' reckless re-hiring and supervision of Mr. Glosson**

14. Silverado Academy had previously terminated Mr. Glosson for having inappropriate relationships with children, "engag[ing] in inappropriate boundaries between [students] and [Mr. Glosson]" and "enmeshing with students."[34]

15. Silverado Academy the improperly re-hired Mr. Glosson[35] and allowed him to have unfettered access to children even though the State of Utah had instructed Silverado Academy that Mr. Glosson "is not permitted to have direct access to children" and was not otherwise authorized to work for a school such as Silverado Academy.[36]

16. After re-hiring him, Defendants disciplined Mr. Glosson for inappropriately touching students and instructed him to "refrain from touching a student unless the situation requires it"[37]

17. After re-hiring him, Defendants received at least one written grievance reporting that Mr. Glosson had sexually abused students.[38]

---

[33] *See Jones & Trevor Marketing, Inc. v. Lowry*, 284 P.3d 630, 636 (Utah 2012) (the "formalities requirement" includes consideration of such items as undercapitalization, failure to observe corporate formalities, and absence of corporate records), quoting *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987), quoted in Motion for Summary Judgment, 15.

[34] *See* Exhibit 1 to Plaintiffs' Motion and Memorandum to Impose Sanctions for Spoliation of Evidence, Doc. 71-1, filed Mar. 19, 2014.

[35] *See* Gillman depo (Ex. 1), 102:8-10 (the circumstances of Mr. Glosson's termination made in ineligible for rehire).

[36] *See* Exhibit 2 to Plaintiffs' Motion and Memorandum to Impose Sanctions for Spoliation of Evidence, Doc. 71-2, filed Mar. 19, 2014; Gillman depo (Ex. 1), 107:3-19 (Mr. Gillman would not have allowed Mr. Glosson to maintain employment at Silverado and "definitely wouldn't have allowed him to stay for five, six more months" after receiving the State of Utah's letter).

[37] Exhibit 3 to Plaintiffs' Motion and Memorandum to Impose Sanctions for Spoliation of Evidence, Doc. 71-3, filed Mar. 19, 2014.

18. Defendant Josh Kellum was an assistant shift supervisor under Defendant Colin Adamson, who together had supervision of four or five cabins of up to 12 children each.[39]

19. Josh Kellum was later the R&A residential coach with responsibility for, among other children, several of the Plaintiffs.[40]

20. Mr. Kellum admitted to overhearing students discussing sexual abuse by Mr. Glosson at some point prior to June 18, 2011.[41]

21. This "threw up a red flag"[42] in Mr. Kellum's mind; it was "not a joking matter,"[43] and whether it was a joke or real, "it had to be dealt with."[44]

22. Mr. Kellum had the students complete a written grievance form reporting on the incidents of abuse.[45]

23. Mr. Kellum testified that he presented the grievance form to Colin Adamson.[46]

---

[38] *See* Opposition to Motion to Imposed Sanctions for Spoliation of Evidence, doc. 74, filed April 11, 2014, 3 (setting forth the relevant deposition testimony).

[39] Kellum depo (Ex. 2), 16:5-17:13 (Mr. Kellum was Mr. Adamson's Assistant Shift Supervisor, and together they had supervision of four or five cabins of up to 12 children each).

[40] *Id.* at 10:25-11:2, 19:15-18 (for the last eight months Silverado was open, Mr. Kellum was the R&A coach 90% of the time); 23:4-24:15 (acknowledging that several Plaintiffs were under Mr. Kellum's care at some point during Mr. Glosson's second period of employment at Silverado Academy).

[41] *Id.* at 56:25-59:13, and June 29, 2011 Written Statement of Joshua Kellum, attached hereto as Exhibit 3.

[42] Kellum depo (Ex. 2), 59:14-16.

[43] *Id.* at 61:14-15.

[44] *Id.* at 68:13-18.

[45] *Id.* at 61:22-63:21.

24. Mr. Adamson denies ever being given a written grievance.[47]

25. Mr. Kellum took no action to protect students from Mr. Glosson, or even to determine whether these serious allegations were investigated in order to know what actions needed to be taken to protect students from Mr. Glosson.[48]

26. But Mr. Kellum did protect Mr. Glosson, by discussing the grievance form with him and telling him "I would not worry about it" unless someone spoke with him.[49]

27. Defendant Colin Adamson had been made the Shift Supervisor a few months prior to the time of Mr. Glosson's arrest in June 2011.[50]

28. His responsibilities included "rotat[ing] between all the cabins to make sure things were running smoothly."[51]

29. Mr. Glosson was under his supervision.[52]

30. Mr. Adamson testified to visiting cabins in which Mr. Glosson was a coach "repeatedly . . . for the whole time I was a Shift Supervisor."[53]

---

[46] *Id.* at 64:3-9.

[47] Adamson depo (Ex. 4), 70:17-71:2.

[48] Kellum depo (Ex. 2), 76:9-21.

[49] *Id.* at 64:19-22.

[50] Adamson depo (Ex. 4), 20:9-23.

[51] *Id.* at 35:5-10.

[52] *Id.* at 47:22-48:3 (Mr. Glosson was mostly under Mr. Adamson's supervision except when Mr. Glosson occasionally picked up extra shifts); 53:7-12 (Mr. Glosson was on Mr. Adamson's shift most of his time in spring 2011, when this abuse happened).

[53] *Id.* at 45:12-18.

31. These "supervisory visits" consisted of spending five or ten minutes watching TV with the kids and making sure "the Coach was walking the cabins and keeping an eye on the kids."[54]

32. Mr. Adamson admits that a Coach is never to be one-on-one with a student,[55]

33. Mr. Adamson knew of Mr. Glosson's prior instances of inappropriately touching children.[56]

34. Mr. Adamson acknowledges that he was supposed to be "always walking around, checking the cabins, checking in on the Coaches constantly, and . . . in pretty much constant . . . radio contact" with Coaches.[57]

35. While on Mr. Adamson's watch and under his supervision, Mr. Glosson had multiple, repeated, and lengthy one-on-one sexual encounters with at least nine students, both on and off Silverado Academy's campus.[58]

36. Mr. Adamson admits that this was the result of inadequate oversight and supervision.[59]

37. On June 29, 2011, Mr. Kellum wrote an account of his interaction with the students reporting the abuse, and of his delivery of the written grievance to Mr. Adamson.[60]

---

[54] *Id.* at 45:20-46:6.

[55] *Id.* at 40:7-12.

[56] *Id.* at 46:25-48:22.

[57] *Id.* at 52:11-20.

[58] *Id.* at 52:11-54:16.

[59] *Id.* at 55:24-56:10.

[60] *See* June 29, 2011 Written Statement of Joshua Kellum (Ex. 3).

38. On June 28, 2011, one day *before* Mr. Kellum recorded his account, Mr. Adamson recorded the following statement:  "I do not remember ever seeing or talking to anyone about a grievance submitted by Luke Freiberger."[61]

## ARGUMENT

### I.   Standard and applicable law.

Summary judgment is only appropriate if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[62]  The Court examines the record to determine whether any genuine issue of material fact is in dispute; if not, it determines whether the movant is entitled to judgment as a matter of law under the applicable substantive law.  The Court examines the factual record and draws all reasonable inferences from the facts in the light most favorable to the non-moving party.[63]  The moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment.[64]  Where, as here, the moving party does not have the ultimate burden of persuasion at trial, it has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.[65]

In this diversity case, Utah substantive law of punitive damages applies.  Where compensatory damages are awarded, punitive damages may be awarded where it is proven by clear and convincing evidence that the tortfeasor's acts or omissions "are the

---

[61] *See* June 28, 2011 Written Statement of Colin Adamson.  Attached hereto as Exhibit 5.

[62] FED. R. CIV. P. 56(a).

[63] *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998).

[64] *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (citations omitted).

[65] *Id.* (citation omitted).

result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others."[66]

Defendants contend that Plaintiffs' punitive damages prayer should be dismissed. This is incorrect as a matter of law and fact.

## II.   Defendants are each liable for punitive damages as a matter of law.

The Defendants named in this case can be divided into three categories.  First, Defendant Silverado Academy, LLC, is a corporate defendant and was Mr. Glosson's employer.  Second, Defendants Tim Bridgewater, Kreg Gillman and Robert Crist were the primary principals of Silverado Academy, LLC, at the time of the incidents giving rise to this action (the Principal Defendants).  On January 30, 2014, the Court permitted Plaintiffs to amend their complaint to name the Principal Defendants on grounds that the evidence could support a finding that Silverado Academy, LLC, was an alter-ego of the Principal Defendants.[67]  The third category of Defendants are Defendants Josh Kellum and Colin Adamson (the Employee Defendants), both employees of Silverado Academy, who played central roles in the circumstances giving rise to this action.  The Court likewise permitted Plaintiffs to amend their complaint to name the Employee Defendants.[68]

---

[66] UTAH CODE ANN. § 78B-8-201(1)(a).

[67] *See* Memorandum Decision and Order, doc. 62, filed Jan. 30, 2014 (Doc. 62 Order), 15-16 (finding that amendment would not be futile and granting Plaintiffs leave to file their amended complaint naming Bridgewater, Gillman and Cris).

[68] *Id.* at 17 (owing to Defendants' failure to adequately and fully respond to Plaintiffs' discovery requests, Plaintiffs' attempt to name Kellum and Anderson is not untimely).

Defendants raise arguments concerning each category of Defendants.  Not only do Defendants' arguments fail as a matter of law, Defendants should be precluded from seeking summary judgment on the basis of lack of evidence because of Defendants' deliberate destruction or wrongful withholding of evidence in disregard of this Court's discovery orders.

### A. Defendants' motion should be denied because Defendants have improperly withheld or destroyed the very evidence they now claim to be lacking.

Plaintiffs have properly sought, and this Court has ordered that Defendants produce, discovery relevant to, among other things, the identity, job description, and supervisor of employees and officers of Silverado Academy; all employees and officers with knowledge of the misconduct of Mr. Glosson; complaints or reports of abuse since 2008; Silverado Academy's financial documents and information; minutes of board meetings held by the Principal Defendants; incident and crisis intervention records; emails discussing Mr. Glosson; advertising materials; and employee disciplinary action forms relating to Mr. Glosson.[69]  Pursuant to the Court's order, these items were to have been produced nearly two months ago.

Not a solitary piece of evidence has since been produced.  Defendants have completely ignored the Court's order.

Instead of obeying this Court's Order, Defendants have moved for summary judgment, arguing that there is insufficient evidence to support Plaintiffs' claims. Defendants claim that Defendant Silverado Academy lacks assets to pay a punitive

---

[69] *See* Doc. 62 Order, 5-11 (order Defendants to produce responses on all of these points by 30 days from the date of the order).

damages verdict,[70] yet Defendants have withheld evidence of Silverado Academy's financial condition.  Defendants declare there is no evidence that the individually-named Defendants had knowledge of Mr. Glosson's misconduct,[71] which is precisely the evidence Defendants wilfully destroyed when they deleted, wiped, and then dismantled their computer network hard drive containing all discoverable e-mail files, as discussed in Plaintiffs' Motion and Memorandum to Impose Sanctions for Spoliation of Evidence.[72]  Defendants assert that Plaintiffs' do not have sufficient evidence to prove that the  Principal Defendants failed to observe corporate formalities sufficient to prove Plaintiffs' alter-ego claims,[73] yet Defendants have refused to produce corporate records or board meeting minutes of meetings that should have been held.

Defendants' persistent refusal to comply with their discovery obligations and this Court's orders has resulted in substantial prejudice to Plaintiffs, who not only have incurred the time and expense required to seek discovery that has never been produced, but who now face a motion for summary judgment premised on the lack of evidence they have tried to obtain by all possible means.

Enough is enough.  Defendants' persistent abuse of the discovery procedures and utter disregard of this Court's orders warrants sanctions, which Plaintiffs request in a separate motion filed concurrently herewith.[74]  To simply order Defendants again to produce discovery they have already been ordered to produce would do no more than

---

[70] Motion for Summary Judgment, 9, 16-18.

[71] *Id.* at 11.

[72] Doc. 71, filed Mar. 19, 2014.

[73] Motion for Summary Judgment, 14-15.

[74] Doc. 75, filed April 24, 2014.

reward Defendants' dilatory tactics, requiring yet another new case schedule and rescheduled trial date.   And Defendants' behavior to date gives neither Plaintiffs nor this Court any confidence that Defendants will comply with Court orders they have so cavalierly disregarded in the past.  Indeed, Defendants' unwillingness to produce evidence in disregard of Court orders gives Plaintiffs serious concern that Defendants' spoliation has been much more extensive than just their electronic files.  Plaintiffs will not be baited into requesting relief that would serve no useful purpose but to reward Defendants' dilatory and dishonest tactics.

Rule 56(d)(3) authorizes courts to "issue any other appropriate order" when a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Defendants' willful and deliberate disregard of this Court's orders and Defendants' discovery obligations is sufficient, standing alone, to deny this motion, and Plaintiffs request such an order.  Defendants' bad faith in filing a Rule 56 motion on grounds that arise solely and exclusively as a result of Defendants' own bad faith litigation tactics further justifies requiring Defendants to pay Plaintiffs' reasonable expenses incurred as a result of this motion, including attorneys fees.[75]  The Court may also hold Defendants and/or their counsel in contempt "or subjected to other appropriate sanctions."[76]

---

[75] FED. R. CIV. P. 56(h).

[76] *Id.*

**B. Defendant Silverado Academy's purported "inability to pay" punitive damages is not grounds to dismiss Plaintiffs' prayer for punitive damages.**

Defendants argue that Plaintiffs' punitive damages prayer should be dismissed because Defendant Silverado Academy has no ability to pay punitive damages.[77]  This is both incorrect and irrelevant as a matter of law for three reasons.

First, this declaration is at once highly suspect and impossible to prove precisely because of Defendants' disregard of this Court's orders.  Defendants have refused to produce Defendants Silverado Academy's financial information to Plaintiffs in discovery, disobeying this Court's express order that it do so.[78]  Neither Plaintiffs nor a jury could determine Defendant Silverado Academy's "relative wealth" because Defendants still refuse to produce the probative evidence on this point.[79]

Second, Silverado Academy is not the only defendant in this case, and Defendants do not explain why one defendant's purportedly limited assets translate to a dismissal of a plaintiff's entire prayer for punitive damages, particularly where Silverado Academy's liability for punitive damages will be the responsibility of the Principal Defendants, of whom Silverado Academy was an alter-ego, as discussed below.

---

[77] Motion for Summary Judgment, 9.

[78] *See* Doc. 62 Order,  9 (ordering Defendants to provide a full response to Plaintiffs' Request for Production No. 3 within 30 days of the order, or by early March, 2014, which request sought "all of Defendant's financial documents, records, papers, and other writings or things, showing or indicating payments made or received from 2008 to the present").

[79] While producing evidence of the defendant's wealth is not a requirement in order for a jury to award punitive damages, it is relevant in determining the propriety of the amount of that award, which is precisely why Plaintiffs have sought this discovery.  *See Hall v. Wal-Mart Stores, Inc.*, 959 P.2d 109, 111-113 (Utah 1998) (evidence of the defendant's wealth is not required prerequisite to a jury's awarding punitive damages, but a "plaintiff who fails to introduce evidence of the defendant's relative wealth risks having an award struck down on the basis of excessiveness").

Third, and most importantly, Defendants have identified no authorities, and Plaintiffs have found none, authorizing dismissal of a prayer for punitive damages just because one defendant claims an inability to pay the punitive damages award. Defendants' only Utah reference is the dissenting opinion in *Hall v. Wal-Mart Stores, Inc.*,[80] which does no more than observe that a defendant's wealth is relevant to the *amount* of punitive damages, not the jury's ability to award them as a matter of law.[81] Neither *Hall* nor any other decision cited by Defendants supports the suggestion that a punitive damages prayer can be dismissed just because one of the defendants responsible for paying that award claims that it has limited assets.

Defendants do not meaningfully challenge Silverado Academy LLC's liability for punitive damages, limiting their argument to Silverado Academy's alleged lack of assets to pay punitive damages.  Silverado Academy was indisputably Eric Glosson's employer,[82] and under *Johnson v. Rogers,*[83] which adopted the Restatement (Second) of Torts § 909, Silverado Academy, LLC—and, by extension, the Principal Defendants under the principles of alter-ego, discussed below—is liable for punitive damages because its "agent [Mr. Glosson] was unfit and the principal or managerial agent [Silverado Academy] was reckless in employing [and] retaining him."[84]  Silverado

---

[80] 959 P.2d 109, 112 (Utah 1998).

[81] *See id.* at 113 ("the defendant who cannot pay a large award of punitive damages can point this out to the jury so that they will not waste their time and that of the bankruptcy courts by awarding an amount that exceeds his ability to pay"), quoted in Motion for Summary Judgment, 17.

[82] *See* Motion for Summary Judgment, 12 ("Mr. Glosson was an employee of Silverado Academy").

[83] 763 P.2d 771 (Utah 1988).

[84] RESTATEMENT (SECOND) OF TORTS § 909(b).

Academy had previously terminated Mr. Glosson for having inappropriate relationships with children, "engag[ing] in inappropriate boundaries between [students] and [Mr. Glosson]" and "enmeshing with students."[85]   Silverado Academy nevertheless re-hired Mr. Glosson and allowed him to have unfettered access to children even though the State of Utah had instructed Silverado Academy that Mr. Glosson "is not permitted to have direct access to children."[86]  Then, Silverado Academy inadequately supervised Mr. Glosson, even after it disciplined him for inappropriately touching students and instructed him to "refrain from touching a student unless the situation requires it,"[87] and even after it received at least one written grievance reporting that Mr. Glosson had sexually abused a student.[88]  A reasonable jury could conclude that this conduct "manifest[ed] a knowing and reckless indifference toward, and a disregard of, the rights of others."[89]

### C.  The Principal Defendants (Tim Bridgewater, Kreg Gillman and Robert Crist) are liable for punitive damages based on alter-ego.

Defendants contend that the Principal Defendants are not liable for punitive damages because the evidence is insufficient to prove that Silverado Academy was an

---

[85] *See* Exhibit 1 to Plaintiffs' Motion and Memorandum to Impose Sanctions for Spoliation of Evidence, Doc. 71-1, filed Mar. 19, 2014.

[86] *See* Exhibit 2 to Plaintiffs' Motion and Memorandum to Impose Sanctions for Spoliation of Evidence, Doc. 71-2, filed Mar. 19, 2014.

[87] Exhibit 3 to Plaintiffs' Motion and Memorandum to Impose Sanctions for Spoliation of Evidence, Doc. 71-3, filed Mar. 19, 2014.

[88] *See* Opposition to Motion to Imposed Sanctions for Spoliation of Evidence, doc. 74, filed April 11, 2014, 3 (setting forth the relevant deposition testimony).

[89] UTAH CODE ANN. § 78B-8-201(1)(a).

alter-ego of the Principal Defendants.[90]  The evidence currently in the record establishes

that Silverado Academy was grossly undercapitalized,[91] and that the Principal

Defendants, as members of the LLC,[92] did not observe corporate formalities or maintain

corporate records, as required as a condition of enjoying the protection of the corporate

veil.[93]

More critically, however, Defendants' challenge is based entirely on the absence

of the very evidence Defendants have improperly withheld from discovery in violation of

this Court's order.  Five months ago, Defendants opposed Plaintiffs' motion for leave to

file their Third Amended Complaint asserting alter-ego claims.[94]  Observing that "[a]

court properly may deny a motion for leave to amend as futile when the proposed

amended complaint would be subject to dismissal for any reason, including that the

amendment would not survive a motion for summary judgment,"[95] the Court allowed

Plaintiffs' amendment in its January 30, 2014 Order.  The Court reiterated "Defendants'

---

[90] Motion for Summary Judgment, 14-16.

[91] *See* Statement of Additional Material Facts, ¶ 12.

[92] UTAH CODE ANN. § 48-2c-113 (requiring that LLCs maintain copies of meeting minutes and written consents obtained from members).

[93] *See Jones & Trevor Marketing, Inc. v. Lowry*, 284 P.3d 630, 636 (Utah 2012) (the "formalities requirement" includes consideration of such items as undercapitalization, failure to observe corporate formalities, and absence of corporate records), quoting *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987), quoted in Motion for Summary Judgment, 15.

[94] Opposition to Motion for Leave to File Third Amended Complaint, Doc. 50, filed Nov. 1, 2013.

[95] *e.spire Commc'ns, Inc. v. N.M. Pub. Regulation Comm'n*, 392 F.3d 1204, 1211 (10th Cir. 2004) (quotations and citations omitted), quoted in Doc. 62 Order, 15.

failure to adequately and fully respond to all of Plaintiffs' discovery requests"[96] and concluded that "[o]nce Plaintiffs are provided with that discovery, the Court cannot say that there will be lacking factual support for Plaintiffs' alter-ego claim to the extent that it would be subject to dismissal."[97]

Despite this Court's clear order and Plaintiffs' repeated requests, Plaintiffs have never been provided with that discovery.

Defendants' arguments in support of their challenge to Plaintiffs' alter-ego claim in the present motion are identical, nearly to the word, with their arguments raised five months ago opposing Plaintiffs' Third Amended Complaint alter-ego claims.  Not a solitary piece of evidence has been produced since then.  Defendants demand summary judgment on an issue the Court has already decided is not subject to dismissal on summary judgment precisely because Defendants have withheld the evidence relevant to it.  Defendants cannot credibly request that the Court reward them with summary judgment against Plaintiffs where any inadequacy in the alter-ego evidence is a result of Defendants' bad faith litigation tactics.  If that is not "sanction[ing] a fraud, promot[ing] injustice, or [reaching] an inequitable result,"[98] nothing is.

### D. Defendants Josh Kellum and Colin Adamson are liable for punitive damages based on their own misconduct.

Defendants argue that the Employee Defendants cannot be held liable for punitive damages because they cannot be "vicariously liable" for Mr. Glosson's misconduct and have committed no misconduct themselves justifying punitive

---

[96] Doc. 62 Order, 16.

[97] *Id.*

[98] *Lowry*, 284 P.3d at 635.

damages.[99]  Plaintiffs do not contend that the Employee Defendants are vicariously liable for Mr. Glosson's misconduct.  They contend that the evidence is sufficient to allow a reasonable jury to conclude that both Defendant Josh Kellum and Defendant Colin Adamson "manifest[ed] a knowing and reckless indifference toward, and a disregard of, the rights of others,"[100] namely, Mr. Glosson's victims under the Employee Defendants' care.

Defendant Josh Kellum was an assistant shift supervisor under Defendant Colin Adamson, who together had supervision of four or five cabins of up to 12 children each ,[101] and later the R&A residential coach with responsibility for, among other children, several of the Plaintiffs here.[102]  Mr. Kellum admitted to overhearing students discussing sexual abuse by Mr. Glosson at some point prior to June 18, 2011.[103]  This "threw up a red flag" in Mr. Kellum's mind; it was "not a joking matter," and whether it was a joke or real, "it had to be dealt with."[104]  Mr. Kellum had the students complete a written grievance form reporting on the incidents of abuse.[105]  Mr. Kellum testified that he presented the grievance form to Colin Adamson,"[106] but then apparently considered

---

[99] Motion for Summary Judgment, 11.

[100] UTAH CODE ANN. § 78B-8-201(1)(a).

[101] Statement of Additional Material Facts, ¶ 18.

[102] *Id.* at ¶ 19.

[103] *Id.* at ¶ 20.

[104] *Id.* at ¶ 21.

[105] *Id.* at ¶ 22.

[106] *Id.* at ¶ 23.

his duty to the children in his care complete.[107]  Mr. Adamson denies ever being given a written grievance.[108]  Whether he actually gave the form to Mr. Adamson or not, Mr. Kellum certainly took no action to protect students from Mr. Glosson, or even to determine whether these serious allegations were investigated in order to know what actions needed to be taken to protect students from Mr. Glosson.[109]  Instead, he protected Mr. Glosson by disclosing the grievance to him and telling him "I would not worry about it" unless someone spoke with him.[110]  A reasonable jury could conclude that Mr. Kellum's apparent indifference toward what he acknowledged was a very serious matter, either by not actually reporting the abuse to Mr. Adamson, or by doing so but then doing nothing to protect Mr. Glosson's victims, manifested a reckless indifference toward the rights and safety of the children in his care.

Defendant Colin Adamson had been made the Shift Supervisor a few months prior to the time of Mr. Glosson's arrest in June 2011.[111]  His responsibilities included "rotat[ing] between all the cabins to make sure things were running smoothly."[112]  Mr. Glosson was under his supervision.[113]  Mr. Adamson testified to visiting cabins in which Mr. Glosson was a coach "repeatedly . . . for the whole time I was a Shift Supervisor."[114]

---

[107] *Id.* at ¶ 25.

[108] *Id.* at ¶ 24.

[109] *Id.* at ¶ 25.

[110] *Id.* at ¶ 26.

[111] *Id.* at ¶ 27.

[112] *Id.* at ¶ 28.

[113] *Id.* at  ¶ 29.

[114] *Id.* at ¶ 30.

These "supervisory visits" consisted of spending five or ten minutes watching TV with the kids and making sure "the Coach was walking the cabins and keeping an eye on the kids."[115]  Yet, while he admits that a Coach is never to be one-on-one with a student,[116] he knew of Mr. Glosson's prior instances of inappropriately touching children,[117] and he acknowledges that he was supposed to be "always walking around, checking the cabins, checking in on the Coaches constantly, and . . . in pretty much constant . . . radio contact" with Coaches,[118] his "supervision" allowed Mr. Glosson to have multiple, repeated, and lengthy one-on-one sexual encounters with at least nine students.[119]  He admits that this was the result of inadequate oversight and supervision.[120]  A reasonable jury could find not only that his oversight and supervision were negligent, but that they were tragically reckless.

Mr. Adamson's grossly substandard "supervision" of Mr. Glosson is not the only point on which a reasonable jury could find that his conduct justifies punitive damages. Mr. Adamson claims he never received the written grievance of sexual abuse that Mr. Kellum testified to giving him.[121]  If the jury believes Mr. Kellum's testimony, Mr. Adamson did receive that report, and his failure to take any action whatsoever on the written grievance he received is itself sufficient grounds on which a reasonable jury

---

[115] *Id.* at ¶ 31.

[116] *Id.* at ¶ 32.

[117] *Id.* at ¶ 33.

[118] *Id.* at ¶ 34.

[119] *Id.* at ¶ 35.

[120] *Id.* at ¶ 36.

[121] *Id.* at ¶ 24.

could find reckless indifference to the rights and safety of Plaintiffs.  Perhaps recognizing this, Mr. Adamson denied receiving the grievance, yet his denial itself evidences an attempted cover-up of his failure.  On June 29, 2011, Mr. Kellum wrote an account of his interaction with the students reporting the abuse, and of his delivery of the written grievance to Mr. Adamson.[122]  On June 28, 2011, one day *before* Mr. Kellum recorded his account, Mr. Adamson recorded the following statement:  "I do not remember ever seeing or talking to anyone about a grievance submitted by Luke Freiberger."[123]  A reasonable jury could find that Mr. Adamson's attempt to disavow something that was purportedly never even disclosed to him until the next day was a deliberate attempt to cover-up his own reckless misconduct.

Even without the evidence Defendants have wrongfully withheld from discovery, the evidence is sufficient to support a finding of punitive damages against both of the Employee Defendants.

### III.   Defendants' requested bifurcation is unnecessary, where the amount of damages should be the only issue submitted to the jury.

Defendants request bifurcation on grounds that the jury may consider "punitive damages evidence" in determining the amount of compensatory damages.[124]  Defendants' request is both unworkable and unnecessary.

Defendants' liability for punitive damages arises out of the same gross misconduct that gives rise to their liability for compensatory damages.  They recklessly rehired and retained an employee to prey on their child residents and allowed him all

---

[122] *See id.* at ¶ 37.

[123] *See id.* at ¶ 38.

[124] Motion for Summary Judgment, 20.

the liberty he needed to do so.  Those students suffered serious and lifelong damages as a result.  Defendants do not propose, and Plaintiffs do not see, how two trials could even be possible where the evidence supporting Defendants' liability for compensatory damages is the same as the evidence supporting Defendants liability for punitive damages, much less why the Court should exercise its discretion[125] in this very inconvenient, uneconomic way for everyone.[126]

What is more, bifurcation should be unnecessary in light of Defendants' inexcusable, repeated and ongoing misconduct in destroying and withholding probative, discoverable evidence required for the just adjudication of Plaintiffs' claims.[127]  The only just way to adjudicate this case is to enter default judgment against Defendants on liability and causation, leaving the only remaining issues for the jury the amount of compensatory damages, whether Defendants' conduct "manifest[ed] a knowing and reckless indifference toward, and a disregard of, the rights of others,"[128] and, if the jury finds that it did, the amount of punitive damages.[129]

The evidence is overlapping, and Defendants' discovery misconduct has prejudiced Plaintiffs to a degree that makes bifurcation impossible and unnecessary.

---

[125] *Easton v. City of Boulder*, 776 F.2d 1441, 1447 (10th Cir.1 985) (a trial court has broad discretion in determining whether to bifurcate a trial or discovery), cited in Motion for Summary Judgment, 18.

[126] *See* FED. R. CIV. P. 42(b), quoted in Motion for Summary Judgment, 18.

[127] As detailed in Plaintiffs' Motion and Memorandum to Impose Sanctions for Spoliation of Evidence, Doc. 71, filed Mar. 19, 2014; and Plaintiffs' Motion for Sanctions for Discovery Abuse, doc,75, filed April 24, 2014.

[128] UTAH CODE ANN. § 78B-8-201(1)(a).

[129] Motion and Memorandum to Impose Sanctions for Spoliation of Evidence, Doc. 71, filed Mar. 19, 2014, 12-13.

## CONCLUSION

Defendants' misconduct while caring for children at Silverado Academy, and in conducting (or not conducting) discovery in this matter requires that their motion be denied.

Plaintiffs requests costs and fees incurred in responding to this motion.[130]

Dated this 24th day of April, 2014.          DEWSNUP, KING & OLSEN

                                             ___/s/ Jessica A. Andrew_____
                                             Colin P. King
                                             Dustin Lance
                                             Jessica A. Andrew

                                             *Attorneys for Plaintiffs*

---

[130] Set forth in Affidavit of Dustin Lance, ¶¶ 13, 18, 22, attached as Exhibit 1 to Plaintiffs' Motion and Supporting Memorandum for Imposition of Sanctions for Discovery Abuse, doc. 75, filed April 24, 2014 (Plaintiffs' counsel has expended some $6,975 in attorney time responding to Defendants' motion for summary judgment).

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April, 2014, I caused a true and correct copy of

the foregoing to be filed via ECF, which sent notice of the same to the following:

Rodney R. Parker
Richard A. Van Wagoner
Snow Christensen & Martineau
10 Exchange Place
Salt Lake City, UT 84111

                     ____Jessica A. Andrew_____